892 F.2d 1163
 65 A.F.T.R.2d 90-710, 90-1 USTC P 50,238
 BIZCAP, INC.
v.
Anthony OLIVE, Director of Internal Revenue, and the
Government of the Virgin Islands.
Appeal of Anthony P. OLIVE, Director of Bureau of Internal
Revenue and the Government of the Virgin Islands,
Appellants.
 No. 89-3199.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 6, 1989.
Decided Dec. 29, 1989.
Rehearing and Rehearing In Banc Denied Jan. 30, 1990.
 
 Joanne E. Bozzuto (argued), Asst. Atty. Gen. (Tax), V.I. Dept. of Justice, Charlotte Amalie, St. Thomas, U.S.V.I., for appellants.
 Todd H. Newman, Nichols, Newman and Silverlight, Christiansted, St. Croix, U.S.V.I., Fred F. Fielding (argued), Wiley, Rein and Fielding, Washington, D.C., Ronald D. Hinds, Dallas, Tex., for appellee.
 Before GIBBONS, Chief Judge, and MANSMANN and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 We are faced here with the confusion which results when an erroneously decided opinion is legislatively corrected prior to its ultimate reversal by the court of appeals. Thus, we must decide whether a Virgin Islands corporation, which lobbied for an exception to the Tax Reform Act of 1986, won a hollow victory and found itself, though not liable to the United States Internal Revenue Service for tax on its stateside income, nevertheless liable to the Virgin Islands Bureau of Internal Revenue. We conclude that the exception in § 1277(c)(2)(D) of the Tax Reform Act of 1986 exempts Bizcap, Inc., from the retroactive effect of the Act with respect to pre-1987 open years. However, the result is to hold Bizcap liable to the BIR for the pre-1987 tax years for which the BIR filed a deficiency notice within the statute of limitations. Since the district court entered summary judgment for Bizcap and found that Bizcap was not liable for any deficiency, either to the IRS or the BIR, we will reverse the decision of the district court.
 
 I.
 
 2
 Caribbean Marine, Inc., a/k/a Bizcap, Inc., a Delaware corporation since March 31, 1983, is considered an inhabitant of the Virgin Islands for purposes of § 28(a) of the Revised Organic Act, Act of July 22, 1954, c. 558, § 28(a), 68 Stat. 508, codified at 48 U.S.C.A. § 1642 (West 1987).[1] Bizcap filed United States income tax returns of a foreign corporation with the Bureau of Internal Revenue in the Virgin Islands ("BIR") for Bizcap's tax years ending May 1983 and 1984. Bizcap filed no forms with the U.S. Internal Revenue Service ("IRS") for the same tax years.
 
 
 3
 Bizcap's 1982 1120F Form (foreign corporation) for 1983 listed non-Virgin Islands source income of over $15 million, and its 1983 1120F Form for 1984 listed non-Virgin Islands source income of $1.6 million. Bizcap's 1982 1120F for Virgin Islands source income listed a loss of $36,052, while the 1983 1120F Form listed Bizcap's Virgin Islands source income as $18,979. Consequently, Bizcap paid $157 in income tax to the BIR on the Virgin Islands source income. Bizcap paid no tax to the IRS on its $16.9 million income from stateside sources.
 
 
 4
 On November 7, 1985, the BIR issued a deficiency notice to Bizcap, determining that Bizcap owed $4,467,439 in tax and $670,116 in penalty for 1983 as well as $650,319 in tax and $97,548 in penalty for 1984. Bizcap filed a petition for redetermination of tax liability in the District Court of the Virgin Islands.
 
 
 5
 On October 22, 1986, Congress passed the 1986 Tax Reform Act which included a section granting an exception from IRS taxation to two Virgin Islands inhabitant corporations, one of which is Bizcap. On November 10, 1986, Bizcap filed a motion for summary judgment claiming it owed no taxes in light of the exception in § 1277(c)(2)(D) of the Tax Reform Act. The district court issued a memorandum and order granting judgment to Bizcap and concluding that Bizcap owed no tax deficiencies for the years 1983 and 1984. The Director of the BIR appeals, contending that, while Bizcap does not owe taxes to the IRS, it nevertheless owes them to the BIR.
 
 II.
 
 6
 While the facts of this appeal are relatively straight-forward, the issues can become complex unless the evolution of Virgin Islands tax law is set forth. After the Virgin Islands were ceded to the United States by Denmark in 1917, Congress passed the Act of March 3, 1917, ch. 171, § 4, 39 Stat. 1133, which continued in effect all of the local laws imposing taxes until Congress provided otherwise. In 1921, as part of the Naval Service Appropriations Act of 1921, Congress passed a statute which created a separate taxing structure mirroring the provisions of the federal tax code. Act of July 12, 1921, c. 44, § 1, 42 Stat. 123, [as amended, found at 48 U.S.C.A. § 1397 (West 1987) ]. The result of the passage of the legislation was to substitute "Virgin Islands" for "United States" in the Internal Revenue Code, 26 U.S.C. § 1 et seq. Thus, to satisfy its obligations to the Virgin Islands, an individual or corporation pays the same amount of taxes to the BIR as it would pay under the same situation in the United States to the IRS. However, until 1935, the IRS and the United States Treasury treated the Virgin Islands as a collection district for United States taxes, rather than recognizing the distinct tax jurisdiction of the Virgin Islands. See Danbury, Inc. v. Olive, 820 F.2d 618 (3d Cir.1987). "Under the collection district approach, all taxpayers with attachments to both locations filed only one return, either in the Virgin Islands or the United States, depending upon where the taxpayer resided on the last day of the tax year." Danbury, 820 F.2d at 621.
 
 
 7
 After 1935, when the mirror tax system was actually implemented, some individuals had to file two returns. For example, a United States corporation doing business in the Virgin Islands would have to file a return with the IRS declaring its tax on stateside or worldwide income as well as file a return with the BIR on its Virgin Island source income. Id. The passage of § 28(a) of the 1954 Revised Organic Act of the Virgin Islands changed the law again. Section 28(a) provides in pertinent part:
 
 
 8
 The proceeds of customs duties, the proceeds of the United States income tax, the proceeds of any taxes levied by the Congress on the inhabitants of the Virgin Islands, ... shall be covered into the treasury of the Virgin Islands, and shall be available for expenditure as the Legislature of the Virgin Islands may provide: Provided that the terms "inhabitants of the Virgin Islands" as used in this section shall include all persons whose permanent residence is in the Virgin Islands, and such persons shall satisfy their income tax obligations under applicable statutes of the United States by paying their tax on income derived from all sources both within and outside the Virgin Islands into the treasury of the Virgin Islands.
 
 
 9
 Act of July 22, 1954, c. 558, § 28(a), 68 Stat. 508, codified at 48 U.S.C.A. § 1642 (West 1987) (emphasis added). In addition, Congress enacted 26 U.S.C. § 7651(5)(B) of the Internal Revenue Code which stated that "For the purposes of this title ... section 28(a) of the Revised Organic Act of the Virgin Islands shall be effective as if such section had been enacted subsequent to the enactment of this title." 26 U.S.C.A. § 7651(5)(B) (West 1967). Section 28(a), which came to be known as the "inhabitant rule," eliminated the need for an individual to file two returns. Instead, an inhabitant of the Virgin Islands could file one form and report all income earned, both Virgin Islands and worldwide sources, to the BIR and pay taxes to the BIR.
 
 
 10
 On January 24, 1986, the district court for the Virgin Islands issued a decision in Danbury, Inc. v. Olive, 627 F.Supp. 513 (D.V.I.1986) which created a tax loophole. The district court reasoned, albeit erroneously, as follows. Danbury considered itself both a foreign corporation and an inhabitant of the Virgin Islands. Section 882 of the Internal Revenue Code states that a non-inhabitant foreign corporation is liable only for taxes on income derived from a trade or business connected with the Virgin Islands. As a general rule, income that a foreign corporation derives from stateside or worldwide income cannot be taxed by the Virgin Islands. 26 U.S.C. § 882. Thus, the district court concluded, as a foreign corporation, Danbury could not be taxed by the BIR on stateside income. Since Danbury was an inhabitant of the Virgin Islands, it was to pay its taxes to the BIR and not to the IRS. Consequently, the district court reasoned, Danbury had to pay only the taxes due on its Virgin Islands source income and the income from stateside business was exempt.
 
 
 11
 The creation of the tax loophole by the district court in Danbury was rectified in two ways. First, the BIR appealed to us, and second, changes were made to the mirror code system in the Tax Reform Act of 1986, Pub.L. No. 99-514, 100 Stat. 2085. Because the Tax Reform Act occurred before we reviewed Danbury, we will discuss it first. The Act contains a provision entitled "Clarification of Treatment of the Virgin Islands Inhabitants" found at § 1275(b) which amends 26 U.S.C. § 7651(5)(B) to read:
 
 
 12
 For purposes of this title, section 28(a) of the Revised Organic Act of the Virgin Islands shall be effective as if such section 28(a) had been enacted before the enactment of this title and such section 28(a) shall have no effect on the amount of income tax liability required to be paid by any person to the United States.
 
 
 13
 26 U.S.C.A. § 7651(5)(B) (West Supp.1987). As a result of § 1275(b), the Virgin Islands tax system returned to the pre-1954 system where a foreign corporation doing business in the Virgin Islands must file two returns; one return to the IRS for its stateside income and one to the BIR for Virgin Islands source income.
 
 
 14
 Section 1277(c)(2) of the Act outlined the date of implementation of the Act.
 
 
 15
 (A) In General.--The amendment made by section 1275(b) shall apply with respect to--
 
 
 16
 (i) any taxable year beginning after December 31, 1986, and
 
 
 17
 (ii) any pre-1987 open year.
 
 
 18
 * * *
 
 
 19
 * * *
 
 
 20
 (C) Pre-1987 Open Year.--For purposes of this paragraph, the term "pre-1987 open year" means any taxable year beginning before January 1, 1987, if on the date of the enactment of this Act the assessment of a deficiency of income tax for such taxable year is not barred by any law or rule of law.
 
 
 21
 Tax Reform Act of 1986, Pub.L. No. 99-514, Title XII, § 1277(c)(2), reprinted at note 26 U.S.C.A. § 931 (West 1988).
 
 
 22
 Following the enactment of the Tax Reform Act, we decided Danbury, Inc. v. Olive, 820 F.2d 618 (3d Cir.1987) and reversed the district court. We determined that the inhabitant rule required that a stateside corporation otherwise considered an inhabitant of the Virgin Islands be held liable to the BIR for tax on all income, and pursuant to the new tax law, Danbury could be found liable to the IRS and the BIR if the district court determined that the years in question were pre-1987 open years. For the purposes of Bizcap, the holding in Danbury, 820 F.2d 618, eliminated the judicially created loophole.
 
 III.
 
 23
 We turn now to the specific issue presented by this appeal. Our review of the granting of a motion for summary judgment requires us to apply the same standard as applied by the district court. See Koshatka v. Philadelphia Newspapers, Inc., 762 F.2d 329 (3d Cir.1985). Thus, we must determine that there exists no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56. Because the only issues here involve the interpretation of a targeted exception to the retroactive effect of the Tax Reform Act of 1986, we can make the determination as a matter of law.
 
 
 24
 Bizcap claims that it owes no taxes on stateside income for the tax years ending May, 1983, and 1984, because it falls within the exception provided in § 1277(c)(2)(D) of the Tax Reform Act. That provision states:
 
 
 25
 (D) Exception.--In the case of any pre-1987 open year, the amendment made by section 1275(b) shall not apply to any domestic corporation if--
 
 
 26
 (i) during the fiscal year which ended May 31, 1986, such corporation was actively engaged directly or through a subsidiary in the conduct of a trade or business in the Virgin Islands and such trade or business consists of business related to marine activities, and
 
 
 27
 (ii) such corporation was incorporated on March 31, 1983, in Delaware.
 
 
 28
 Pub.L. No. 99-514, Title XII, § 1277, 100 Stat. 2593, reprinted at note 26 U.S.C.A. § 931. Bizcap contends that the targeted exception contained in § 1277(c)(2)(D) was intended to grant Bizcap an exception from both IRS and BIR taxation on its non-Virgin Island source income.
 
 
 29
 Neither Bizcap nor the BIR dispute that the exception in § 1277(c)(2)(D) was intended for Bizcap [a/k/a Caribbean Marine, Inc.]. The BIR, however, claims that the exception exempts Bizcap from IRS liability, but not from tax liability to the BIR. We agree. Section 1277(c)(2)(D) effectively treats Bizcap as though the Tax Reform Act of 1986 had never been enacted for those years which are pre-1987 open years. A pre-1987 open year is one in which the statute of limitations has not run against either the BIR or the IRS. While the IRS failed to file a deficiency notice with Bizcap on Bizcap's stateside income,[2] the BIR did file a deficiency notice for both 1983 and 1984. Therefore, 1983 and 1984 are pre-1987 open years with respect to the BIR. Since 1983 and 1984 are open years, § 1277(c)(2)(D) provides that § 1275(b) of the Tax Reform Act--the section repealing the inhabitant rule--does not apply to Bizcap.
 
 
 30
 At the time the Act was passed, Congress believed the interplay between 26 U.S.C. § 882 and § 28(a) resulted in a tax loophole. Bizcap lobbied to have the loophole applied to it by avoiding the retroactive effect of the repeal of the inhabitant rule. However, since we determined in Danbury, 820 F.2d at 625, that there was no loophole, the exception granted to Bizcap results in Bizcap remaining liable to the BIR for taxes on both its stateside and Virgin Islands source income for 1983 and 1984.
 
 
 31
 Bizcap argues, and the dissent agrees, that Congress intended for Bizcap to have a complete exemption from tax liability on its stateside income. However, the plain language of the exception only exempts Bizcap from the retroactive effect of the tax law change. Thus, Bizcap remained liable under the previous tax laws applicable to the Virgin Islands, whatever they were or were determined to be by our court in Danbury.[3] Bizcap and its lobbyists were fully aware that the Danbury decision had been appealed to us and that the decision could be reversed. Rather than couch the exception in terms of the retroactivity of the repeal of the inhabitant rule, the drafters of the legislation could have specifically stated that the targeted corporations were exempt from tax liability on stateside income for the years in question. However, that is not what happened here. Instead, Congress chose clear language which linked Bizcap's exception to the application of the Virgin Islands law prior to the repeal of the inhabitant rule. We are not at liberty to ignore the plain language of a congressional enactment. See Central Trust Co. v. Creditor's Committee, 454 U.S. 354, 360, 102 S.Ct. 695, 698, 70 L.Ed.2d 542 (1982) (per curiam), citing, Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917) ("It is elementary that the meaning of a statute must, in the first instance be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.").
 
 
 32
 Bizcap asks us to ignore our decision in Danbury and support its exemption on the basis of congressional intent as evidenced by the legislative history. We acknowledge that Bizcap was obviously intended to be excepted from the retroactive effect of the repeal of the inhabitant rule.[4] It was our reversal of the district court's decision in Danbury, where we stated that no loophole ever existed, which effectively eliminated the loophole for Bizcap. Indeed, in its trial brief, the BIR admitted that had we not reversed the district court's decision in Danbury, Bizcap would not owe any taxes on its stateside income. But we are not free to ignore the holding of another panel of this court absent reversal of the opinion after consideration by the entire court. I.O.P. Chapter 8(C). Thus, we must apply the exception in § 1277(c)(2)(D) in light of our holding in Danbury.
 
 IV.
 
 33
 Because we conclude that the effect of § 1277(c)(2)(D) was to except Bizcap from the retroactive effect of the repeal of the inhabitant rule, thereby leaving Bizcap in the position it would have been had the Tax Reform Act of 1986 not been enacted, Bizcap remains liable to the BIR for those pre-1987 years for which the BIR filed deficiency notices. Consequently, we will reverse the decision of the district court which entered judgment for Bizcap and remand for a determination of liabilities, penalties and interest due the BIR.
 
 
 34
 GIBBONS, Chief Judge, dissenting.
 
 
 35
 The Court's depiction of the evolution of Virgin Islands tax law and of the problem which faces us here is accurate enough, but the solution it adopts is highly technical and flies in the face of common sense.
 
 
 36
 The problem is indeed one of statutory interpretation. As a general matter the Court is correct and in accord with hoary precedent when it writes, "We are not at liberty to ignore the plain language of a congressional enactment." At 1167. However, the actual English words of the statute we are to interpret are:
 
 
 37
 (D) Exception.--In the case of any pre-1987 open year, the amendment made by section 1275(b) shall not apply to any domestic corporation if--
 
 
 38
 (i) during the fiscal year which ended May 31, 1986, such corporation was actively engaged directly or through a subsidiary in the conduct of a trade or business in the Virgin Islands and such trade or business consists of business related to marine activities, and
 
 
 39
 (ii) such corporation was incorporated on March 31, 1983, in Delaware.
 
 
 40
 Tax Reform Act of 1986, Pub.L. No. 99-514, § 1277(c)(2)(D), 100 Stat. 2085, 2601, (reprinted as note after 26 U.S.C.A. § 931 (West Supp.1989)). Surely, this language is "plain" in some ways and not in others. It is plain that this enactment functions to exempt Bizcap, the corporation described here, from the effects of section 1275(b) for the period specified--whatever those effects may have been. The effects of section 1275(b), however, are not "plain" from these words; they can be discerned only in the section's own words:
 
 
 41
 (b) Clarification of Treatment of Virgin Islands Inhabitants.--Subparagraph (B) of section 7651(5) (relating to the Virgin Islands) is amended to read as follows:
 
 
 42
 "(B) For purposes of this title [ie., U.S.C. tit. 26, the Internal Revenue Code], section 28(a) of the Revised Organic Act of the Virgin Islands shall be effective as if such section 28(a) had been enacted before the enactment of this title and such section 28(a) shall have no effect on the amount of income tax liability required to be paid by any person to the United States."
 
 
 43
 Tax Reform Act of 1986, Pub.L. No. 99-514, § 1275(b), 100 Stat. 2085, 2598 (amending Internal Revenue Code of 1954, § 7651(5)(B), 26 U.S.C. § 7651(5)(B) (1976)). When this Court interpreted section 1275(b) in Danbury, Inc. v. Olive, 820 F.2d 618 (3d Cir.1987), we treated the language as "plain" in the sense that we did not reach beyond the statutory text itself in order to construe it. We found that the statute "repeals the 'inhabitant rule' ... the rule that inhabitants of the Virgin Islands satisfy tax obligations to the United States by paying those taxes to the Virgin Islands rather than to the Internal Revenue Service." Id. at 625. But the precise effects of the inhabitant rule, in turn, are not themselves "plain" from the language of this statute.
 
 
 44
 The inhabitant rule stems from yet another statute, section 28(a) of the Revised Organic Act of 1954, ch. 558, 68 Stat. 497, 508 (codified as amended at 48 U.S.C. § 1642 (1982)). In Danbury we did find that section 28(a) was itself "unambiguous," Danbury at 622, but nonetheless the rule which stemmed from it had had several effects in the real world. One effect was that all taxes paid by residents of the Virgin Islands went into the Virgin Islands treasury, even if the taxpayer was a foreign corporation. Another effect, which obtained until our decision, was that the taxes some foreign corporations paid included no taxes at all on non-Virgin Islands income. This second effect was a mistaken application of section 28(a), as we held in Danbury, but the mistake is plain only upon examination of section 28(a) itself.
 
 
 45
 There are thus three statutes to interpret in this case, and the language of each is plain in a different way. The clear purpose of Congress in enacting section 1275(b)--and this is what is "plain" in its language--was to erase all the effects of the inhabitant rule. One perceived effect was exemption from all non-Virgin Islands taxation. In the majority's own words, "Congress believed the interplay between 26 U.S.C. § 882 and § 28(a) resulted in a tax loophole." At 1168. Congress therefore designed to collect taxes on U.S.-source income from all Virgin Islands inhabitants and to deposit the proceeds in the federal treasury. It seems plain to me, therefore, that the purpose of section 1277(c)(2)(D) was both to direct to the BIR whatever taxes Bizcap was liable for, and also to exempt it from taxes on its non-Virgin Islands income. The majority's approach seems rigid and technical, and the artificial consistency it imposes on the interpretation of the three statutes distorts the plain language of section 1277(c)(2)(D).
 
 
 46
 Technically, I suppose, the purpose of Congress evident on the face of section 1277(c)(2)(D) could have been either to grant Bizcap a complete exemption from taxation for a few pre-1987 years, or to give the Virgin Islands a few more years of tax revenue from Bizcap. But it is hard to imagine that when Congress identified Bizcap as a targeted exception to the retroactive application of the repeal of the inhabitant rule, it intended to benefit the Virgin Islands. The point of singling out Bizcap was to benefit Bizcap. And of course the extrinsic evidence of congressional intent, as the district court pointed out, is unequivocal: the legislative history of section 1275(b) shows clearly that Congress thought it was closing a loophole allowing exemption from all taxation on non-Virgin Islands income; Bizcap lobbied hard for its exception in section 1277(c)(2)(D); and the BIR lobbied hard against it.
 
 
 47
 The logic of the majority opinion is to impute yet another intent to Congress in enacting section 1277(c)(2)(D), one I find more unlikely still. The majority implies that Congress intended to make the effect of the statute depend on our subsequent determination in Danbury of the scope of section 1275(b) and the inhabitant rule. That analysis suggests that, since the lobbyists knew the appeal was pending and the legislature rejected alternative language for the targeted exception, the statute's purpose was merely to make Bizcap's fortunes depend on Danbury's success in the Court of Appeals, as we later construed another statute, in litigation in which Bizcap was unrepresented. That is, the majority would now have us believe that the purpose of Congress evident on the face of section 1277(d)(2)(D) was not to hand Bizcap a victory, nor even to hand the BIR a victory, but to give Bizcap a sporting chance of victory in the Danbury court. This logically awkward conclusion strains credulity. I would affirm.
 
 
 
 [1]
 The Revised Organic Act, passed in 1954, provides the basic charter for the civil government of the people of the Virgin Islands
 
 
 [2]
 This was not a mistake on the part of the IRS which naturally assumed that Bizcap would pay all its taxes to the Virgin Islands pursuant to the inhabitant rule, § 28(a)
 
 
 [3]
 Indeed, as explained in the history of the Tax Reform Act, under present law: "An 'inhabitant' of the Virgin Islands pays tax to the Virgin Islands on its worldwide income, but pays no U.S. tax." H. Conf. Rep. 99-841, Title XII, II-679, reprinted at, 1986 U.S.Code Cong. & Admin.News, 4075, 4767 (1987)
 
 
 [4]
 The dissent misconstrues our reasoning and concludes that we imply "Congress intended to make the effect of the statute depend on our subsequent determination in Danbury of the scope of section 1275(b) and the inhabitant rule." We have merely recognized that Congress intended to grant Bizcap an exemption from the repeal of the inhabitant rule. Had we affirmed the district court's opinion in Danbury, Bizcap would not be liable to either the BIR or the IRS for taxes. However, such was not the case. The result, Bizcap's liability, is totally separate from the mechanics of the repeal of the inhabitant rule. Bizcap's liability stems from the fact that the BIR had filed deficiency notices for the tax years ending May, 1983 and 1984 thereby keeping those years open with respect to the BIR